Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7593 | **DATE** | 2/13/2002 |
| **CASE TITLE** | Betty Nelson vs. Ameritech | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in this memorandum opinion and order, Ameritech's motion for summary judgment is granted in its entirety and this action is dismissed with prejudice. (28-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | FEB 1 4 2002 | |
| | Notified counsel by telephone. | date docketed | 41 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| SN | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BETTY NELSON, )
)
      Plaintiff, )
)
v. ) No. 99 C 7593
)
AMERITECH, )
)
      Defendant. )

MEMORANDUM OPINION AND ORDER

Betty Nelson ("Nelson") has charged her former employer "Ameritech" (the doing-business name of Illinois Bell Telephone Company) with employment discrimination in violation of the Americans with Disabilities Act ("ADA," 42 U.S.C. §§12101-12117)[1] and the Age Discrimination in Employment Act ("ADEA," 29 U.S.C. §§621-634). Nelson's Equal Employment Opportunity Commission ("EEOC") charge, made a part of her Complaint, alleged that Ameritech discriminated against her after she returned from a medical absence and ultimately forced her into early retirement.

Ameritech moved for summary judgment under Fed. R. Civ. P ("Rule") 56, and both sides have attempted to comply with this District Court's LR 56.1.[2] For the reasons contained in this

---

[1] Further ADA citations will take the form "Section --," using the Title 42 numbering rather than ADA's internal section numbers.

[2] LR 56.1 is designed to facilitate the resolution of Rule 56 motions by calling for evidentiary statements and responses to such statements (in each instance with record citations), thus highlighting the existence or nonexistence of factual disputes. Ameritech has done just that in its LR 56.1(a)(3) statement,

memorandum opinion and order, Ameritech's motion is granted in its entirety and this action is dismissed.

## Summary Judgment Standards

Familiar Rule 56 principles impose on Ameritech the burden of establishing the lack of a genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose this Court must "read[ ] the record in the light most favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence" (St. Louis N. Joint Venture v. P & L Enters., Inc., 116 F. 3d 262, 265 n.2 (7th Cir. 1997)). As Pipitone v. United States, 180 F.3d 859, 861 (7th Cir. 1999) has more recently quoted from Roger v. Yellow Freight Sys., Inc., 21 F.3d 146, 149 (7th Cir. 1994):

> A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole.

As with any summary judgment motion, this Court accepts nonmovant Nelson's version of any disputed facts so long as it is

---

cited "A. St. ¶ --." Nelson has not complied with the LR 56.1(b)(3)(B) requirement that she provide a list of additional facts that assertedly require the denial of summary judgment. Instead she has submitted a list of five questions, the answers to which she says are in dispute between the parties--and Nelson's explanations of her position on each of those issues does provide record citations to certain facts, cited here as "N. St. ¶ --." Nelson's response to Ameritech's LR 56.1(a)(3) statement is cited "N. Resp. ¶ --," although where an A. St. assertion is not controverted a citation to the latter ordinarily suffices. This opinion employs the same "A." and "N." abbreviations when referring to the parties' memoranda.

2

supported by record evidence. What follows in the Facts section is culled from the parties' submissions in that manner.

## Facts

Nelson was hired by Ameritech as a telephone operator in 1968 or 1969 (A. St. ¶7). In about 1988 she was promoted to the nonmanagement position of supervisor's aide (A. St. ¶8). In that position she both trained other operators and continued to work as an operator herself when needed (id.). Throughout her employment with Ameritech Nelson was a member of the Communication Workers of America union (A. St. ¶9).

On December 6, 1993 Nelson fell while at work and was taken to the hospital (A. St. ¶17). On December 27 she was diagnosed with seizure disorder (partial disorder) by Dr. Robert Blanco (A. St. ¶25). On the same date Dr. Blanco completed a Certification of Disability form releasing Nelson to return to work on January 5, 1994 (id.). Dr. Blanco also prescribed anti-seizure medication for Nelson and instructed her to refrain from driving, swimming and using heavy machinery (id.).

Nelson then returned to work, and on January 14, 1994 she met with her manager Clara Maxwell ("Maxwell") to discuss her job attendance during the preceding six months--a regular office procedure (A. St. ¶¶18-19). At that meeting Maxwell told Nelson that she was on "final warning status" because of her prior absences (N. Resp. ¶19). Maxwell did not take any official

3

disciplinary steps, but rather counseled Nelson to make her aware of attendance issues (A. St. ¶20, N. Resp. ¶3).

Nelson and Maxwell did not then or later discuss Nelson's medical condition, though at some point Nelson left a copy of a medical report describing her seizure disorder on Maxwell's desk (N. St. ¶3). Although Nelson knew that she was entitled to have a union representative present during any disciplinary action (she herself had been a union steward), she did not request one for the January 14 meeting (A. St. ¶22). Nor did Nelson ever file a grievance related to her meeting with Maxwell or ask her union to file one on her behalf (A. St. ¶23).

In her deposition Nelson testified that after she returned to work she asked Maxwell for a three- to six-month leave of absence to permit her to get her medical condition under control (N. St. ¶5). Maxwell did not grant that request (id.). Under Ameritech policy managers such as Maxwell are not authorized to grant employee absences lasting more than eight days (A. St. ¶24). Instead the Ameritech Occupational Medicine department deals with such absences, requiring employees to submit certifications of disability prepared by their physicians before granting any such requests (A. St. ¶24). Nelson did not communicate with the Occupational Medicine department or ask her doctor to prepare a form supporting her request for additional leave (A. St. 27).

4

Nelson did not get in touch with Dr. Blanco or receive treatment from any other medical provider between December 27, 1993 and June 13, 1994 (A. St. ¶25, 27). In June she reported to Dr. Blanco that she had run out of her medication and had experienced a seizure (id.). Over the next few months Nelson saw Dr. Blanco several times, but she also cancelled or missed several appointments and experienced some seizures when she failed to take her medication as prescribed (A. St. ¶¶28-35). Dr. Blanco testified that if Nelson had taken her medication as prescribed, her seizures would have been reasonably well controlled and would not have disrupted her ability to work or care for herself or her family (A. St. ¶36).

Nelson testified that her seizures have prevented her from driving long distances, although she does drive short distances (A. St. ¶37). At first following her diagnosis she was afraid to go places by herself, but she has been learning how to do so (id.). Otherwise the seizures have not affected other aspects of her life (id.). In 1995 and 1996 Nelson experienced five or six seizures each year (A. St. ¶38). In 1999 she had three seizures (id.).

In March 1994 Ameritech announced a voluntary early retirement program ("Program") (A. St. ¶39). Under the Program members of the Communication Workers Union who retired or voluntarily left the company before August 5, 1995 would receive

5

an additional three years of age and service when Ameritech calculated their pension benefits (id.). All participation in the Program was voluntary, and employees who applied for the Program could revoke their applications up until their last day of work (A. St. ¶40).

On May 27, 1994 Nelson signed an application for the Program, electing to retire on July 4, 1994 (A. St. ¶45). Nelson understood that the Program was voluntary and that she had the right to revoke her decision before her retirement date (A. St. ¶46). Nelson never complained to management that she felt she was being forced to retire (A. St. ¶47). She was never subjected to any age-based comments or told that she needed to take early retirement (A. St. ¶¶43, 48). She has not sought further employment since leaving Ameritech (A. St. ¶50).

After Nelson left Ameritech, Maxwell completed a Report of Employee Leaving Service (A. St. ¶51). Maxwell stated there that Nelson's performance and attendance had been satisfactory and that re-employment of Nelson was recommended (id.).

On September 15, 1994 Nelson filed a charge of discrimination with EEOC, asserting that Ameritech had discriminated against her because of her age and disability. After she received a right-to-sue letter, she timely filed this action.

## Age Discrimination Claim

As stated at the outset, Nelson's Complaint advanced an ADEA claim of age discrimination as well as an ADA claim. But she has wholly failed to address Ameritech's Rule 56 challenge to her ADEA claim. Hence that claim is deemed abandoned, and summary judgment is granted in Ameritech's favor on that claim.

## Disability Claim

By definition the ADA prohibits disability-based employer discrimination (Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship, 209 F.3d 678, 683 (7th Cir. 2000), citing Section 12112(a)). But for Nelson to establish[3] a prima facie case under the statute she must show that (1) she is disabled, (2) she is otherwise qualified to perform the essential functions of the job with or without a reasonable accommodation and (3) her employer either took an adverse job action against her because of her disability or failed to make a reasonable accommodation (Stevens v. Ill. Dep't of Transp., 210 F.3d 732, 736 (7th Cir. 2000)). Because the undisputed evidence shows both (1) that Nelson is not disabled and (2) that she did not suffer an adverse job action,

---

[3] Of course Nelson need not "show" or "prove" or "establish" anything to defeat Ameritech's summary judgment motion. Instead she must merely demonstrate the existence of a genuine issue of material (that is, outcome-determinative) fact. Although this opinion will nonetheless often employ one of the quoted terms because that terminology is regularly used by the cited cases, this Court has consistently imposed the lesser burden of proof on Nelson in testing her positions.

7

her ADA claim must be dismissed.

First, Nelson is not disabled in ADA terms. Having a medical condition does not make a person disabled unless that condition substantially limits a major life activity (Section 12101(2)). Whether such a disability exists must be determined on a case-by-case basis (Toyota Motor Mfg., Ky., Inc. v. Williams, 122 S. Ct. 681, 692 (2002)). Here Nelson's seizure disorder plainly does not meet that standard, for there is no evidence that her disorder has affected any major life activity.

Impairments that can be corrected by medication do not substantially limit major life activities (Sutton v. United Air Lines, Inc., 527 U.S. 471, 482-83 (1999)). And it will be remembered that Dr. Blanco testified that if Nelson had taken her medication as prescribed, her condition would have been reasonably well controlled and would not have disrupted her ability to work or care for herself and her family.[4] Her doctor placed only three restrictions on Nelson's activities while she used the medication: no driving or using heavy machinery or swimming. None of those activities, either singly or in combination, equates to a major life activity.[5]

---

[4] Even when Nelson failed to take her medication consistently in 1994, she experienced only five or six seizures during the entire year.

[5] While ADA does not itself specify what constitutes a major life activity, EEOC has interpreted that phrase as including such activity as "caring for oneself, performing manual tasks,

8

Nelson's own testimony also fails to show that her major life activities were substantially limited by her seizures. According to Nelson the disorder affected her in just two ways: She no longer drives long distances, and she was initially afraid to go places by herself, a fear that she has largely overcome. Nelson admits that nothing else in her life was affected by the diagnosis. Importantly, her actions as to her Ameritech employment are wholly consistent with that. Nelson returned to work shortly after her diagnosis, and she continued working--without incident--for nearly six months until her retirement date. There were no indications that her condition affected her ability to perform her job duties. Quite simply, Nelson is not "disabled" in ADA terms.

That alone suffices to defeat Nelson's disability claim, but there is another equally fatal flaw in her position: She has failed to show that she suffered an adverse employment action. Though Nelson argues that Ameritech constructively discharged her--a materially adverse employment action (EEOC v. Univ. of Chicago Hosps., 276 F. 3d 326, 331 (7th Cir. 2002))--the facts fall far short of what she must show to establish constructive discharge.

---

walking, seeing, hearing, speaking, breathing, learning, and working" (Furnish v. SVI Sys. Inc., 270 F.3d 445, 449 (7th Cir. 2001), citing 29 C.F.R. §1630.2(i)). While that list is not exhaustive, the restrictions imposed on Nelson clearly do not approach a similar magnitude.

9

It is not entirely clear from her briefs whether Nelson is alleging constructive discharge in the more common sense--that she was "forced to resign because her working conditions, viewed from the standpoint of the reasonable employee, had become unbearable" (Grube v. Lau Indus., Inc., 257 F.3d 723, 728 (7th Cir. 2001))--or in the sense of a coerced resignation in which her employer's action effectively forced her to retire or face serious consequences (Univ. of Chicago Hosps., 276 F.3d at 331; Patterson v. Portch, 853 F.2d 1399, 1405-06 (7th Cir. 1988)). But Nelson's claim fails either way.

That first alternative--intolerability of working conditions--is a difficult one to invoke, because employees are ordinarily expected to remain at work while seeking redress (Tutman v. WBBM-TV, Inc., 209 F.3d 1044, 1050 (7th Cir. 2000)). Hence intolerable working conditions have been found only in egregious cases, often involving threatened or actual physical violence, while in contrast "a range of unpleasant and even embarrassing employer actions" have been found "tolerable and therefore insufficient to effect a constructive discharge" (Simpson v. Borg Warner Auto., Inc., 196 F.3d 873, 877 (7th Cir. 2001)). Nothing Nelson has proffered even approaches an intolerable working condition.

Nelson's argument for constructive discharge is based on (1) Maxwell's placing her on "final warning status" following her

return to work in January 1994 and (2) Maxwell's refusal to grant her request for a three to six month leave of absence, which assertedly forced her either to resign or "risk serious health consequences" (N. Mem. 4). Both claims are insufficient as a matter of law.

Nelson's meeting with Maxwell was a counseling session that had no disciplinary ramifications. Counseling sessions do not constitute adverse employment actions or create intolerable work environments (see Ribando v. United Airlines, Inc., 200 F.3d 507, 511 (7th Cir. 1999)). Nothing that Nelson did even hinted that she believed her working conditions were intolerable, nor were those conditions intolerable from the standpoint of a reasonable employee. Nelson did not request that a union representative attend her meeting with Maxwell, nor did she file any grievance as to Maxwell's actions. Instead, four months after she returned to work she applied for early retirement and continued to work at Ameritech until early July 1994--nearly six months after her meeting with Maxwell. Those actions are totally inconsistent with a claim of an intolerable working environment (see Brown v. Ameritech Corp., 128 F.3d 605, 608 (7th Cir. 1997)).

Further, it was not reasonable for Nelson to treat Maxwell's failure to grant a leave of absence as a final decision on the matter. Like all Ameritech managers, Maxwell was not authorized to grant absences greater than eight days in length, so she had

11

no power to grant Nelson's request. Nelson knew the proper procedure for obtaining a leave of absence, having already obtained one following her first seizure in December 1993, yet she never communicated with the Occupational Medicine department or submitted a medical certificate in support of her request.[6] Finally, Nelson never filed a grievance to protest Maxwell's denial of her request. In short, she has presented nothing at all to support a finding of intolerable work conditions.

Even if Nelson's constructive discharge claim were to be viewed as a claim that Ameritech coerced her resignation by forcing her into early retirement, no evidence supports such a contention. For purposes of assessing whether a resignation was coerced, the salient issue is voluntariness (Henn v. Nat'l Geographic Soc., 819 F.2d 824, 828 (7th Cir. 1987)). Here Nelson admits that no one at Ameritech told her that she must take early retirement. She knew the Program was voluntary. She did not apply for the Program until several months after her encounter with Maxwell, and she knew that she could rescind her application at any time before her final day of employment.

In sum, nothing whatever suggests that Nelson was not free to continue working for Ameritech if she so chose.[7] All of the

---

[6] In fact, Nelson sought no medical treatment at all between January and June 1994.

[7] Nelson claims that she faced "serious health consequences" if she continued working, but she says nothing about what those

12

evidence points to the conclusion that Nelson voluntarily left her employment to take advantage of the enhanced benefits Ameritech offered to her under the early retirement program. She was not constructively discharged.

Thus Nelson has also failed to raise a genuine factual issue as to her having suffered any adverse employment action. That provides an independently adequate alternate ground for dismissing her claim of discrimination under ADA.

## Conclusion

Because there are no genuine issues of material fact and because there is simply no evidence on which a reasonable jury could find for Nelson on her claim of discrimination under either ADA or ADEA, Ameritech is entitled to a judgment as a matter of law. Its Rule 56 motion is granted, and this action is dismissed with prejudice.

                                              _____
                                              Milton I. Shadur
                                              Senior United States District Judge

Date: February 13, 2002

---

consequences might have been. Without any supporting evidence, that assertion is insufficient to prove that she was forced into early retirement (<u>Tyler v. Runyon</u>, 70 F. 3d 458, 468 (7th Cir. 1995)).